1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Sherman, an individual; Mary Ann Sherman, an individual; Sherman Group, LLC, a Florida limited liability company; 2084832 Ontario, Inc., a corporation; 2085083 Ontario, Inc., a corporation; John M. Scaffidi, Chapter 7 Trustee of the Thomas J. George Bankruptcy Estate.<br><br>Plaintiffs,<br><br>vs.<br><br>PremierGarage Systems, LLC, an Arizona limited liability company; Mark Loberg and Anna Loberg, husband and wife; Rich Hanson and Jane Doe Hanson, husband and wife; Ken Lundin and Jane Doe Lundin, husband and wife; Scott Johnson and Jane Doe Johnson, husband and wife.<br><br>Defendants. | No. CV 10-0269-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and (6). (Doc. 26). Plaintiffs filed a Response and Defendants filed a Reply. (Docs. 29, 33).

**I.    Background**

This is a diversity case involving several franchisees of PremierGarage Systems, L.L.C. (Doc. 26, p. 2). The Plaintiffs set forth the following as alleged facts in their Complaint.

1    PremierGarage is a nationwide marketer of franchises that sell and install products for
2    residential garages, including floor coatings, cabinets, and organizers. (Doc. 1, p. 4; Doc. 26,
3    p. 2). Mark Loberg and Anna Loberg ("the Lobergs") organized PremierGarage in 2002 to
4    establish a network of franchises throughout the United States to sell and install
5    PremierGarage products. (Doc. 1, p. 7). Mark Hanson ("Hanson"), Kenneth Lundin
6    ("Lundin"), and Scott Johnson ("Johnson") were PremierGarage executives at material times
7    throughout relevant transactions. (Doc. 1, p. 5).

8    Plaintiffs Kevin Sherman and Mary Ann Sherman ("the Shermans") are individuals
9    who reside in Clermont, Florida. (Id., p. 3). On March 28, 2005, the Shermans received a
10   Franchise Disclosure Document ("FDD")[1] from Defendants that included disclaimers relating
11   to oral or written information concerning franchise costs, sales, or potential profits, among
12   other things. (Doc. 1, p. 10). On April 15, 2005, the Shermans were given a "Dealership
13   Information Package" which made affirmative earnings claims and provided several sales
14   scenarios, retail sales prices, costs, and potential profit figures. (Id.). The Shermans allege
15   that various PremierGarage executives made a number of representations regarding floor
16   coating being "thoroughly tested," that it could be installed in one day, that it would not peel,
17   flake, or fail to adhere to garage floors. (Doc. 1, p. 11). On or around June 21, 2005, the
18   Shermans signed a PremierGarage franchise agreement to operate a PremierGarage franchise
19   in the Florida Panhandle (the "Panhandle Dealer Agreement"). (Doc. 1, p. 3).

20   The Shermans allege that Defendants made further representations about the profit
21   prospects and the quality of the floor-coating materials at a training in Phoenix, Arizona.
22   (Doc. 1, p. 13). They further allege that Defendants' flooring specialist recommended and
23   instructed the Shermans to use "Bondo" to repair concrete garage floors prior to applying the
24   specific PremierGarage products, as well as to "wet etch" the concrete garage floors prior to

---

[1] Before the January 2007 disclosure amendments, the FDD was referred to as the Uniform Franchise Offering Circular ("UFOC") by the Federal Trade Commission.

applying PremierGarage floor-coating products. (Doc. 1, p. 14).

On or around February 27, 2006, the Shermans signed a second Dealer Agreement to operate a PremierGarage franchise in Orlando, Florida (the "Orlando Dealer Agreement"). (Id.).

The Shermans allege that they began having problems with PremierGarage products, as they were peeling, flaking, bubbling, and not adhering properly. They also allege that, due to these problems, additional time and money had to be spent on repairs and that they could not operate the franchise at a profit, which eventually led to "severe operating losses." (Doc. 1, pp. 16-17). The Shermans further allege that, when confronted with these problems, Defendants blamed the Shermans' installation procedures and continued to stand by their initial recommendations of "wet etching" the floors and using "Bondo" for repairs. (Doc. 1, p. 18). Eventually, two PremierGarage-hired engineers allegedly confirmed in a report that the product failures were not the result of the Shermans' preparatory work, but were the result of PremierGarage products reacting negatively to the type of concrete used in the Orlando area. (Doc. 1, p. 19).

Plaintiffs George Bell, Phil Sheegl, and Stephen J. Weiss (collectively, "BSW") are individuals involved with the two Canadian corporations that each owned a franchise in the Canadian province of Ontario, Canada. (Doc. 1, pp. 3-4; Doc. 26, p. 2). Sheegl resides in Winnipeg, Manitoba, and both Bell and Weiss reside in Scottsdale, Arizona. (Doc. 1, pp. 3-4). On or around October 2005, BSW signed two PremierGarage franchise agreements (the "BSW Agreements") to operate two PremierGarage franchises in the Toronto area. (Doc. 1, p. 30).

Plaintiff Thomas J. George ("George") is a former PremierGarage franchisee who currently resides in Pewawkee, Wisconsin. (Doc. 1, p. 4). On or around August 16, 2004, George signed a franchise agreement to operate a PremierGarage franchise in Plainfield, Illinois. (Id.). On October 29, 2008, George filed for Chapter 7 bankruptcy. (Id.). The trustee brings the claims on behalf of the George bankruptcy estate. (Id.).

1  All Plaintiffs now seek rescission of their franchise agreements, restitution and/or compensatory damages, and attorneys' fees. Specifically, the Shermans bring claims for violations of the Florida Franchise Misrepresentation Act ("FFMA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), intentional misrepresentation/ fraud, and negligent misrepresentation (Counts I-IV). BSW brings claims for violations of the Arthur Wishart Act (the "Wishart Act"), intentional misrepresentation, and negligent misrepresentation (V-VII). All Plaintiffs bring an action for Defendants' breach of contract and the implied covenant of good faith and fair dealing (Count VIII).

Defendants move to dismiss all claims with the exception of the claim against PremierGarage Systems for breach of the implied duty of good faith. (Doc. 26).

**II. Discussion**

**A.  Venue**

Defendants move to dismiss BSW's claims based on improper venue due to the forum-selection clauses in the Dealer Agreements. The forum-selection clause states, in relevant part:

> This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein and each of the parties hereto agrees irrevocably to attorn to the jurisdiction of the courts of the said Province.

(Doc. 1, Exhs. J-K, p. 19). The BSW Plaintiffs contend that the forum-selection clause is permissive, not exclusive, given the absence of the word "exclusively and" before the word "irrevocably." (Doc. 29, p. 2). According to BSW, this language solely requires a responding party to "irrevocably attorn" to Ontario's jurisdiction in the event that a claim is brought in Ontario. (Id.). The BSW Plaintiffs further contest that Item 22 of the FDD, which contains a summary chart of termination, renewal, and transfer-related provisions, does not put them on notice that all lawsuits are to be brought in Ontario. (Id.). Provision 'v' of this

- 4 -

chart is titled "choice of forum," it references section 12.15 of the Dealer Agreement,[2] and reads: "All lawsuits must be brought in the Province of Ontario."  (Doc. 1, Exh. G,  p. 34). The Court finds that the language in the forum-selection clause, coupled with the unambiguous language of the "choice of forum" provision in the FDD, gives more than sufficient notice to the parties that Ontario is the elected –and only– forum.  The Court finds this especially true when the BSW Plaintiffs have signed two separate agreements, under no apparent evidence that they agreed to the forum-selection clause under duress, fraud, or a lack of time to review.  <u>Expedition Helicopters, Inc. v. Honeywell, Inc.</u>, [2010] CarswellOnt 3091 ¶ 24 (Ont. C.A.) (enforcing contract's forum-selection clause while noting that fraud and improper inducement to the clause are two of few factors that may justify departure from giving the clause full effect).  Accordingly, the Court upholds the forum-selection clause to preclude the remaining claims brought by the BSW Plaintiffs.  Thus, Counts V (Wishart Act), VI (intentional misrepresentation), and VII (negligent misrepresentation), which pertain solely to the BSW Plaintiffs, are dismissed.

In their Response, the BSW Plaintiffs further argue that their claims should not be dismissed on the basis of *forum non conveniens.*  (Doc. 29, p. 2).  Because Defendants have not moved to dismiss on this basis, the Court will not address this issue and proceeds to address only those issues pertaining to the remaining Plaintiffs, namely, the Shermans and George.

**B.    Economic Loss Doctrine**

In Counts III & IV, the Shermans allege tort claims for intentional misrepresentation/fraud and negligent misrepresentation, respectively.  Defendants contend that the Shermans' tort claims are barred by the economic loss doctrine as they are predicated on allegations that Defendants made misrepresentations regarding issues which are

---

[2] Section 12.15 of the Dealer Agreement is titled "GOVERNING LAW/JURISDICTION/VENUE."  (Doc. 1, Exh. J, p. 19; Exh. K, p. 22).

specifically addressed in the Dealer Agreements. (Doc. 26, p. 12). The Shermans argue that their claims are not barred because contract law and tort law seek to protect different interests. (Doc. 29, p. 11).

The Court begins by noting that the scope of the economic loss doctrine in Arizona is by no means settled. In the most recent decision in which the Arizona Supreme Court extended the economic loss rule to construction defect cases, the Court attempted to clarify the doctrine's general scope and extent of application. Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc., 223 Ariz. 320, 223 P.3d 664 (Ariz. 2010) (en banc). Acknowledging that there have been conflicting decisions by both the state court of appeals and the federal courts regarding the doctrine's application, the Court attempted to guide the lowers courts away from the "overly broad" formulation that the economic loss doctrine "'bars a party from recovering economic damages in tort unless accompanied by physical harm.'" Id. at 667 (quoting Carstens v. City of Phoenix, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003)). The Court then proceeded to distinguish two issues which, in its view, are typically conflated: "(1) whether a contracting party should be limited to its contract remedies for purely economic loss; and (2) whether a plaintiff may assert tort claims for economic damages against a defendant absent any contract between the parties." Id. at 667. After finding that the economic loss doctrine is "best directed" to the first of these two issues, the Court defined the doctrine as "a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." Id. After extensively reviewing key Arizona economic loss doctrine cases and "consider[ing] the underlying policies of tort and contract law," the Court found that, "in construction defect cases, the policies of the law generally will be best served by leaving the parties to their commercial remedies when a contracting party has incurred only economic loss, in the form of repair costs, diminished value, or lost profits." Id. at 669-70 (quotations omitted). The Court reasoned that:

> The contract law policy of upholding the expectations of the parties has as

> much, if not greater, force in construction defect cases as in product defect cases. Construction-related contracts often are negotiated between the parties on a project-specific basis and have detailed provisions allocating risks of loss and specifying remedies. In this context, allowing tort claims poses a greater danger of undermining the policy concerns of contract law. That law seeks to encourage parties to order their prospective relationships, including the allocation of risk of future losses and the identification of remedies, and to enforce any resulting agreement consistent with the parties' expectations.

Id. at 669.

Defendants contend that, under Flagstaff, the Shermans' claims are precluded because the Dealer Agreements allocate risks for relying on external representations and contain warranties for products purchased from Defendants. Although the Shermans do not address the Flagstaff decision, they cite to several Arizona District Court cases that support their contention that the economic loss rule does not bar their tort claims. (Doc. 29, pp. 11-12). However, all of these Arizona District Court cases were decided before Flagstaff. Flagstaff, 223 Ariz. 320, 223 P.3d 664.

Keeping the principles of tort and contract law set forth in Flagstaff in mind, the Court finds that the economic loss doctrine applies in this case to bar the Shermans' fraud and negligent misrepresentation claims. Although it appears that the Flagstaff decision limited its expansion of the economic loss rule to construction defect cases, the Arizona Supreme Court rested its decision on the fact that "contracts often are negotiated between the parties on a project-specific basis and have detailed provisions allocating risks of loss and specifying remedies. In this context, allowing tort claims poses a greater danger of undermining the policy concerns of contract law." Flagstaff, 223 Ariz. 320, 223 P.3d at 669. Here, the Shermans negotiated and signed, not one, but two Dealer Agreements – one for the Panhandle area and one for the Orlando area – signed approximately eight months apart. The bases of the Shermans' fraud and negligent misrepresentation claims rest on statements made "regarding the profits Plaintiffs' PremierGarage franchises would generate and the quality and performance characteristics of PremierGarage's floor-coating materials." (Doc. 1, p. 2). Similarly to the contract at issue in Flagstaff, the Dealer Agreements allocate risks of loss

and specify remedies for both of these issues (external representations and product performance) in sections 12.10, 12.11, 12.12., and 12.14. (Doc. 1, Exh. D, p. 21; Exh. E, p. 19-20). Given that the Shermans are a contracting party, that they seek to recover economic losses "in the form of repairs costs, . . . or lost profits," Flagstaff, 223 Ariz. 320, 223 P.3d at 670, and that they signed two separate Dealer Agreements, the Court finds that economic loss rule applies here in order to "uphold the expectations of the parties by limiting [the] plaintiff[s] to contractual remedies for loss of the benefit of the bargain." Flagstaff, 223 Ariz. 320, 223 P.3d at 671. Accordingly, Counts III (intentional misrepresentation/ fraud) and IV (negligent misrepresentation) are dismissed.[3]

### C. Choice of Law: FFMA & FDUTPA

Defendants argue that the Shermans' claims under both the Florida Franchise Misrepresentation Act ("FFMA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") are precluded by the choice-of-law provision in the Dealer Agreements. This provision states, in pertinent part:

> This Agreement shall be interpreted and governed under the laws of the State of Arizona. Any dispute pertaining to or arising out of this Agreement shall be resolved by the state or federal courts located in Maricopa County, Arizona. The parties hereby irrevocably attorn to the jurisdiction of the state and federal courts in Maricopa County, Arizona for any actions arising out of or related to this Agreement.

(Doc. 1, Exh. D, p. 21; Exh. E, p. 20). The Shermans argue that this provision should be disregarded because, under the required § 187 conflict-of-law analysis, "the application of [Arizona law] would be contrary to the fundamental policy of [Florida] . . . to protect franchisees within its boundaries," by allowing Defendants to avoid liability under Florida's state statutes. (Doc. 29, p. 14). They contend that these Florida statutes provide more protection than Arizona common law. (Id.).

---

[3] Because the Court has dismissed Counts III and IV, Defendants additional arguments relating to these counts–the statute of limitations and the heightened pleading requirements under 9(b), Federal Rules of Civil Procedure–are rendered moot. (Doc. 26, p. 10, 13). As such, the Court need not address them.

When sitting in diversity, federal courts are bound to follow the substantive law of the state; consequently, state courts' interpretations of state law are binding on federal courts. Erie R. Co. v. Tomkins, 304 U.S. 64,72-73; Evans v. Singer, 518 F.Supp.2d 1134, 1139 (D. Az. 2007) (quoting Powell v. Lambert, 357 F.3d 871, 874 (9th Cir. 2004)) (internal quotations omitted). When parties include an express choice-of-law provision, Arizona courts apply the analysis set forth in the Restatement (Second) of Conflict of Laws § 187 to determine whether that choice is "valid and effective" and to determine the appropriate balance between the parties' circumstances and states' interests. Swanson v. The Image Bank, Inc., 205 Ariz. 264, 266-67, 77 P.3d 439, 441-42 (2003). After engaging in a step-by-step § 187 analysis, the Swanson court concluded that the "particular issue" of whether the parties could contractually waive the statutory right to treble damages under an Arizona statute could be resolved under § 187(1) and did not proceed to discuss state policies pursuant to § 187(2)(b). Because both parties were of relatively equal bargaining power, because both were represented by counsel, and because the plain language of the Arizona statute neither expressly nor impliedly prohibited modification or waiver of a statutory remedy, the court held that the choice-of-law provision would be enforced. Swanson, 206 Ariz. 264, 77 P.3d at 443-44. The Court further held that the court of appeals "had erred by collapsing the analysis of subsections (1) and (2)(b) of Restatement § 187 by engaging in a discussion of state policy" to supersede the choice-of-law provision in the parties' contract. Swanson, 206 Ariz. at 268, 77 P.3d at 443. Accordingly, this Court will apply the same conflict of law analysis to the choice-of-law provision in the case at bar, pursuant to § 187 of the Restatement (Second) of the Conflict of Laws. For the purpose of the choice-of-law analysis, the Court will analyze the two Florida statutes separately.

Section 187 provides, in pertinent part:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one in which the parties could have resolved by an explicit provision in their agreement directed to that issue.

1  Restatement § 187(1) (2010).  This is a question to be determined by the local law of the state selected by application of the rule of § 188.  Restatement § 187 cmt. c.  The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which has the most significant relationship to the transaction and the parties . . . Restatement § 188(1) (2010).  Because PremierGarage is located in Arizona and because the FDUTPA claim is mostly based on oral representations made in Arizona, the Court finds that Arizona has the most significant relationship to the transaction and parties.  Accordingly, Arizona law will be applied to the following threshold issue.

First, the Court identifies the "particular issue" under § 187(1) to be whether parties may contractually waive any statutory right, protection, or remedy under the Florida statutes. After a review of the plain language of the FFMA, the Court finds that it does not contain an anti-waiver provision, either express or implied.  West's F.S.A. § 817.416 (2010).  Further, under Florida law, a "contract will be governed in accordance with the intent of the parties, absent any evidence of fraud or unequal bargaining power that would undermine the validity of the choice-of-law provision." Dickinson v. Exec. Business Group, Inc., 983 F.Supp 1395, 1397 (M.D. Fla. 1997) (analyzing validity of choice-of-law provision in the context of an FFMA foreign statutory claim).  Here, although the parties allege fraud and negligent misrepresentation against Defendants, there is no evidence that they are in regard to the choice-of-law provision.  Similarly to the parties in Swanson, the Shermans conflate subsections (1) and (2)(b) of § 187 by discussing Florida state policy in support of their argument to allow the FFMA foreign statute claim.  Because the Arizona Supreme Court in Swanson has already directed courts not to do this, this Court need not address whether application of Arizona law would violate a fundamental Florida state policy to determine whether the choice-of-law provision will be upheld with respect to the FFMA. Swanson, 206 Ariz. at 268, 77 P.3d at 443.  Accordingly, the choice-of-law provision in the Dealer Agreements shall be enforced to preclude the claim under the Florida Franchise Misrepresentation Act ("FFMA") (Count I).

In contrast, a review of the plain language of the other Florida statute, the FDUTPA, reveals that it impliedly prohibits liability limitations. Two pertinent sections of the FDUTPA imply that the Florida legislature intended to restrict liability limitations: § 501.202(2)-(3) and § 501.204(1)-(2). West's F.S.A. § 501.201, *et seq.* (2010). Unlike the Arizona statute at issue in Swanson, here, the FDUTPA contains stronger, instructive language with regard to its purpose and the legislative intent. Id. Arguably, it follows that, if the Florida legislature has not given the courts discretion to choose not to comply with the interpretations of the federal Uniform Deceptive Trade Practices Act, then it was not the intent of the legislature to give contracting parties discretion to waive federally comparable statutory rights and remedies. Because this is not an express prohibition, however, the Court will now address whether the choice-of-law provision may be disregarded pursuant to § 187(2)(b).

Section 187(2)(b) states, in pertinent part:

> (2) The law of the chosen state by the parties to govern their contractual rights and duties will be applied, . . . unless...
> 
> . . .
> 
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state . . .

Restatement § 187(2)(b). "The more closely the state of the chosen law, [Arizona], is related to the contract and the parties, the more fundamental must be the policy of the state of the otherwise applicable law, [Florida], to justify denying effect to the choice-of-law provision." Restatement § 187 cmt. g. Here, the Shermans base their FDUTPA claim on oral and written "false and misleading representations" by Defendants concerning levels of potential sales, income, potential profit, and the nature of the products they were required to purchase. (Doc. 1, p. 56). It appears from the Complaint that the majority of these allegedly misleading conversations took place here in Phoenix, Arizona or at seminars in Las Vegas, Nevada. (Doc. 1, pp. 13-21). It also appears that both Dealer Agreements were signed in Arizona. The Shermans contend that Florida courts have ruled that attempts to limit FDUTPA liability

- 11 -

is contrary to public policy because the statute is designed to protect both the public and the individual. See Holt v. O'Brien Imports of Fort Myers, Inc., 862 So.2d 87, 88 (Fla. App. 2003). However, the court's reasoning in Holt centered on the specific unavailability of injunctive relief sought by the Plaintiffs, if the arbitration provision were enforced. Id. at 89. Here, if the choice-of-law provision is enforced, the Shermans may still bring suit for unfair and deceptive trade practices pursuant to Arizona's Consumer Fraud Act. A.R.S. § 44-1522, *et seq.*; see Haisch v. Allstate Ins. Co., 197 Ariz. 606, 5 P.3d 940 (App. Div. 1 2000) (holding that a private right of action exists for damages caused by a violation of the Consumer Fraud Act). Thus, applying Arizona law does not appear to be contrary to a fundamental Florida state policy that affords its residents remedies for unfair and deceptive trade practices. In light of this, the Court deems it appropriate and just to enforce the choice-of-law provision– agreed to by both parties– to preclude the Shermans' FDUTPA claim. Accordingly, Count II (FDUTPA) is also dismissed.[4]

### D. **Breach of Contract**

In Count VIII, all Plaintiffs[5] allege breach of contract and the implied covenant of good faith and fair dealing. (Doc. 1, p. 78). Defendants move to dismiss only the breach of contract claim for failure to provide specific provisions of the contract which Defendants allegedly breached. (Doc. 26, p. 10).

To survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain

---

[4] Having dismissed the Shermans' claims pertaining to the FFMA and the FDUTPA, the Court need not address whether the Shermans have failed to state a claim under both Florida state statutes or whether the integration and disclaimer clauses in the Dealer Agreements defeat their statutory claims. (Doc. 26, pp. 14-16).

[5] Because the Court has already held that this is not the appropriate forum for the BSW Plaintiffs, the term "Plaintiffs" in this section refers only to the Shermans and George.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Compare Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) ("[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party.") with Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

However, "[a] dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). Also, in evaluating a motion to dismiss, a district court need not limit itself to the allegations in the complaint, but may take into account any "facts that are [ ] alleged on the face of the complaint [and] contained in documents attached to the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

In their response, Plaintiffs argue that, because they have "realleged and incorporated by reference" preceding paragraphs in the Complaint, they have already set forth the specific paragraphs of the Dealer Agreements Defendants breached. (Doc. 29, p. 9). Plaintiffs further cite to specific paragraphs within the Complaint that direct Defendants to the contractual provisions allegedly breached. (Id.). Defendants contend that most of these paragraphs lack any contractual provisions, but that they solely discuss the problems with various franchises and contain allegations of "representations which turned out to be inaccurate." (Doc. 33, p. 6). However, Defendants selectively omitted paragraphs that, in fact, reference specific contractual provisions. (Doc. 33, p. 5). The Court has reviewed the paragraphs provided by Plaintiffs – namely 40-45 (referencing provisions 2.2, 3.2, 4.1, 4.3,

10.1, 12.12), 58-81 (referencing provisions 2.2, 3.2, 4.1, 4.3, 10.1, 12.12), 155-160 (referencing provisions 2.2, 3.2, 4.1, 4.3, 10.1(b), and 12.12), 164-186 (referencing how Defendants violated provisions of the Dealer Agreements) – and finds that Plaintiffs have sufficiently pleaded their breach of contract claim. Accordingly, the Court will deny Defendants' motion to dismiss Count VIII (breach of contract).

**III. Summary**

The Court finds that the choice-of-law provisions included in the Dealer Agreements bar Plaintiffs Shermans' FFMA and FDUTPA claims. The Court also finds that the economic loss rule bars Plaintiffs Shermans' intentional or negligent misrepresentation and fraud claims. Accordingly, Counts I-IV are dismissed. The Court further finds that the forum-selection clauses included within the Dealer Agreements bar all claims brought by the BSW Plaintiffs. Accordingly, Counts V-VII are dismissed. However, because the Court finds that the Shermans and George have sufficiently pleaded their breach of contract claim, the Court denies Defendants' motion to dismiss Count VIII; as such, Defendants remain a party to this action. The two remaining claims are for breach of contract and the implied covenant of good faith and fair dealing.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part Defendants' Motion to Dismiss. (Doc. 26).

**IT IS FURTHER ORDERED** dismissing the Bell/Sheegl/Weiss Plaintiffs from this action.

DATED this 30th day of July, 2010.

_____
Mary H. Murguia
United States District Judge

- 14 -